IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| Brian D. Iverson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number:  3:08cv128 |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Brian D. Iverson ("Iverson") appeals from an unfavorable decision of

Administrative Law Judge Lyle Olson dated June 9, 2008.  (Tr. 13-27).  On October 20, 2008,

the Appeals Council (AC) denied review, making the decision of the ALJ the final decision of

the Commissioner. (Tr. 10).  Iverson filed this complaint on December 9, 2008.  On February 7,

2009, the Commissioner found Iverson disabled  based on his second application for benefits for

Title II disability benefits filed after the earlier unfavorable decision.  Memorandum in Support

of Motion for "Sentence Four" Reversal and Remand, Doc. #10, at 1.  The Commissioner found

Iverson "entitled to monthly disability benefits from Social Security beginning December 2008."

Motion for "Sentence Four" Reversal and Remand, Doc. #9-1[1] This case involves the period

---

[1]Plaintiff asserts the December 2008 onset date for disability benefits on his second
application is the earliest month of benefits allowable by the Commissioner after an unfavorable
decision.  42 U.S.C. §§ 423 (a)(1)(E)(I) and 423 (c)(2)(A).

1

from the disability onset date of February 5, 2005, as alleged in the fist application, until the effective date of the award of benefits.

## Summary of Recommendations

The Magistrate Judge recommends plaintiff's Motion for "Sentence Four" Reversal and Remand be **DENIED**. After consideration of the entire record, including the materials submitted to the AC on the first application for benefits, the Magistrate Judge recommends plaintiff's Motion for Summary Judgment (Doc. #18) be **GRANTED**, the Commissioner's Motion for Summary Judgment (Doc. #23) be **DENIED**, and this claim be remanded to the Commissioner for an award of benefits from February 5, 2005 to the effective date of the favorable decision.

## Motion for Remand Pursuant to Sentence Four

Plaintiff seeks a "Sentence Four" reversal and remand of the Commissioner's unfavorable decision on his first application. Under Sentence Four, a court may affirm, modify, or reverse the decision of the Commissioner with or without remanding for rehearing. In Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000), the court noted the distinctions between Sentence Four and Sentence Six:

> Section 405(g), which governs judicial review of final decisions made by the Commissioner, authorizes only two types of remand orders: (1) those made pursuant to sentence four, and (2) those made pursuant to sentence six. See Melkonyan v. Sullivan, 501 U.S. 89, 9899, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991); Hafner v. Sullivan, 972 F.2d 249, 250-51 (8th Cir.1992). Sentence four, by its terms, authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four remand is therefore proper whenever the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such a ruling. See Melkonyan, 501 U.S. at 98, 111 S.Ct. 2157.

Sentence six, in contrast, authorizes a remand in only two limited situations: (1) where the Commissioner requests a remand before answering the complaint of a claimant seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings. See 42 U.S.C. § 405(g); Shalala v. Schaefer, 509 U.S. 292, 297 n. 2, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir.1993). The first of these situations distinguishes a sentence six remand from a sentence four remand based on timing, while the second situation does so based on substance. See Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (noting that sentence six authorizes an "entirely different kind of remand" than sentence four). This substantive distinction insures that a remand pursuant to the second part of sentence six concerns only new and material evidence and "does not rule in any way as to the correctness of the administrative proceeding," as does a sentence four remand. Melkonyan, 501 U.S. at 98, 111 S.Ct. 2157; see Finkelstein, 496 U.S. at 626, 110 S.Ct. 2658.

Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000).  A Sentence Four remand is proper when the court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case accordingly.  Id.  In contrast, a Sentence Six remand does not require a substantive ruling by the court, but rather allows the court to remand the decision either based on the timing of a motion from the Commissioner, or because there is new and material evidence that was not presented by the claimant before the unfavorable decision.  Id. at 1010.

Plaintiff asserts that the Commissioner's subsequent favorable finding of disability, without detailed explanation as to the reasons, "begs the question whether [Iverson] was disabled" during the time of the Commissioner's consideration of his first application. Memorandum in Support of Motion for "Sentence Four" Reversal and Remand, Doc. # 10, at 3. Plaintiff relies on the Commissioner's administrative guidelines, which state,  "[I]f the subsequent claim is allowed while the prior claim in pending in court. . . , the Appeals Council (AC) must determine the effect, if any, of such action on the other claim."  Id. at 3-4 (citing Hearings, Appeals and Litigation Law Manual (HALLEX)  I-4-2-101, Section I.A.) (Copy

3

attached to plaintiff's brief in support of motion for Sentence Four reversal).

The Commissioner has refused to seek or agree to a remand, contending HALLEX is not binding law and does not <u>require</u> remand in this case.  <u>Memorandum in Opposition to Motion for "Sentence Four" Reversal and Remand</u>, Doc. # 12, at 2-3.  The Magistrate Judge concludes that the current state of the law in the Eighth Circuit does not support a conclusion that the Commissioner's refusal to follow the HALLEX provision amounts to a substantive error <u>requiring</u> remand pursuant to Sentence Four.  <u>See</u> <u>Ellis v. Astrue</u>, 2008 WL 4449452 (E.D. Mo. 2008) (The Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX).[2]

Although Iverson did not initially ask the court to consider a Sentence Six remand, plaintiff essentially seeks a Sentence Six remand based on new and material evidence, with the new evidence being the subsequent favorable decision of the Commissioner.  In <u>Allen v. Astrue</u>, the claimant similarly argued that the subsequent favorable decision "constitutes new and material evidence justifying remand under §405(g)."  <u>Allen v. Astrue</u>, 561 F.3d 646, 653 (6th Cir. 2009).   The Sixth Circuit rejected this argument, stating, "The magistrate judge correctly found that a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent

---

[2]Courts differ on the effect of HALLEX.  The Ninth Circuit, in <u>Moore v. Apfel</u>, stated, "As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual." <u>Moore v. Apfel</u>, 216 F.3d 864, 868-69 (9th Cir.2000) (<u>citing</u> <u>Schweiker v. Hansen</u>, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam) (holding that rules in claims promulgated for claims representatives do not bind the Social Security Administration)). The Fifth Circuit held in <u>Newton v. Apfel</u> that although HALLEX does not carry the authority of law, "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required,' and should prejudice result from a violation of an agency's internal rules, the result cannot stand."  <u>Newton v. Apfel</u>, 209 F.3d 448, 459 (5th Cir.2000) (<u>quoting</u> <u>Hall v. Schweiker</u>, 660 F.2d 116, 119 (5th Cir.1981)).  <u>See also</u> <u>Starr v. Apfel</u>, 2008 WL 4402195, n.1 (E.D. Mo.) (recognizing a circuit split as to whether or not the HALLEX is binding law).

4

decision, does not constitute new and material evidence under § 405(g)."  Id.   The court further recognized that a Sentence Six remand would only be appropriate if the later favorable decision was supported by new and material evidence that claimant "had good cause for not raising in the prior proceeding."  Id.

 Accordingly, the Magistrate Judge recommends plaintiff's Motion for Sentence Four Remand (Doc. #10) based solely on the subsequent award of benefits be **DENIED**.

**Merits of Decision on First Application**

The Magistrate Judge advised the parties of her intention to recommend a denial of the motion for summary judgment based on "Sentence Four."  Plaintiff requested the opportunity to challenge the merits of the ALJ decision on the first application.  The court established a new briefing schedule.  Both parties have now moved for summary judgment on the merits of the Commissioner's denial of benefits on his first application.

Factual Background

Iverson protectively filed his application for disability insurance benefits and supplemental security income on December 21, 2006 under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, and Social Security Act, 42 U.S.C. §§ 1381-1383c. (Tr. 68-70).  He alleged a disability onset date of February 5, 2005.  (Tr. 68).  His application was denied initially and on reconsideration.  Iverson timely requested a hearing, which was held on February 13, 2008.  The Administrative Law Judge ("ALJ") issued his decision on June 9, 2008, finding plaintiff was not disabled.  (Tr. 10-27).  Iverson requested review of the ALJ's decision and submitted supplemental evidence to the Appeals Council consisting of a letter from Iverson's treating physician,  (Tr. 9), along with a letter from counsel setting forth contentions of error.

The Appeals Council considered the additional evidence, finding it did not provide a basis for changing the ALJ's decision.  (Tr. 8).  The Appeals Council denied Iverson's request for review, making the decision of the ALJ the Commissioner's final decision.

Iverson was 35 years old at the time of the hearing.  (Tr. 26, 68).  He completed high school and attended two years of trade school in TV and air conditioning. (Tr. 262).  He has worked as a bartender and bar manager.  (Tr. 439-40).  Iverson alleges he has been disabled since February 1, 2005 due to obesity, back pain, migraines, multiple sclerosis and depression. (Tr. 15).

## Legal Standard

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  To affirm the Commissioner's decision, the court must find that substantial evidence appearing in the record as a whole supports the decision.  See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).  "This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that fairly detracts from the ALJ's decision."  Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (citing Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009)).  The court must  "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Minor, 574 F.3d at 627 (citing Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1998)).  See also Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated, the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous

'substantial evidence' standard."); <u>Gavin v. Heckler</u>, 811 F.2d 1195, 1199 (8th Cir. 1987) ("It is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained.").

"In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." <u>Bergmann v. Apfel</u>, 207 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The court must decide if substantial evidence in the record as a whole, including the new evidence submitted after the hearing, supports the ALJ's decision. <u>Id.</u> (citation omitted). This requires the court to determine how the ALJ would have weighed the new evidence had it existed at the hearing. <u>Id.</u>

ALJ Findings and Issues for Review

The ALJ employed the familiar five-step test to determine whether Iverson was disabled.[3] The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 15). He found Iverson has the following severe impairments that do not meet or equal any listed impairments: "Multiple sclerosis, relapsing remitting type; cervical demyelinating disease, evidenced by marked degenerative bony hypertrophy/disc protrusion at the C5-6 level compromising the C6 root on the left; degenerative changes involving disc spaces, end plates and facet joints, lumbar spine, most advanced at L4-5; and status post right knee arthroscopy due to osteochondritis dessicans (20 CFR 404.1520 (c) and 416.920(c))." (Tr. 15,

---

[3]The five steps are: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(5)(i)-(v).

Tr. 18).  The ALJ noted Iverson experiences "sensorineural hearing loss," "has persistent elevated liver function tests," is mildly obese, and suffers from depression, but determined these impairments were nonsevere and did not significantly impact Iverson's ability to work.  (Tr. 16-17).  The ALJ determined Iverson is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy he can perform.  (Tr. 25-26). Specifically, ALJ Olson found he can perform unskilled, sedentary to light work with limitations, such as the occupations of telephone solicitor and credit card sales clerk.  (Tr. 26-27).

Plaintiff alleges the ALJ and AC failed to give proper weight to the opinions of his treating physician, and in particular the "new and material evidence" regarding his ability to work only part-time, failed to accept as credible plaintiff's subjective complaints of fatigue and its impact on his activities of daily living, failed to consider the combined effect of all of his impairments, failed to develop the record, and relied on deficient vocational expert testimony.

<u>ALJ's Credibility Analysis</u>

"An adjudicator may not disregard a claimant's subjective complaints solely because the medical evidence does not fully support them," or solely based on personal observations. <u>Polaski</u> <u>v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).  Several factors must be considered in analyzing a plaintiff's subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1. the claimant's daily activities; 2. the duration,

8

frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; 5. functional restrictions.

Id.  "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."  Id.  See also Burress v. Apfel, 141 F.3d 875, 880-81 (8th Cir. 1998) (quoting Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir.1998) ("Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ 'must make an express credibility determination detailing the reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors.'").

The ALJ's finding that plaintiff's complaints were not completely credible is not supported by substantial evidence.  The ALJ found:

> The undersigned finds that although claimant described daily activities which are quite limited, two factors weigh against considering these allegations to be strong evidence in favor of finding claimant disabled.  First, alleged limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to claimant's medication (sic) condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities are considered inconsistent with statements made to his treating physicians, and others throughout the record, including statements made by third parties (i.e. going out to nightclubs, traveling to visit friends, fishing, and playing computer games and play station 2).  What remains when the inconsistencies and incongruities are sorted out is a picture of person that is as busy as he wants to be, given that he is not working and is living with his parents.

(Tr. 19) (emphasis added).  The ALJ further stated:

> After careful review of the entire record, the undersigned is compelled to find that claimant enjoys a level of activities of daily living and social enjoyment that is not at all consistent with his allegation of disability due to pain, numbness and weakness.  Although claimant need not be bedridden in order to be found entitled to disability benefits under the Act, the nature and extent of claimant's activities of daily living must at a minimum be consistent with the alleged basis for disability.  This is not the case here.

(Tr. 25).  It appears this is the extent of the ALJ's credibility analysis.   Polaski v. Heckler, 751
F.2d 943 (8th Cir. 1984).

        The court has examined the opinion and  finds that the ALJ's decision evidences no
serious consideration or express discrediting of claimant's subjective complaints of fatigue.  The
record is replete with accounts from family and friends, as well as claimant's own testimony, of
the difficulties he has experienced as a result of his fatigue.  According to his mother, claimant
cares for a dog, with assistance (Tr. 248), cooks frozen dinners and leftovers in the microwave in
her absence (Tr. 249), picks up his room and washes dishes occasionally (about once a week)
(Tr. 249), has voluntarily limited his driving due to concerns with numbness in his feet (Tr. 250),
and may go fishing with his parents two or three times in the summer, if he feels up to it. (Tr.
251).  Claimant testified similarly.  When asked if he could cook meals, claimant stated he could
make microwave meals and make sandwiches.  (Tr. 422).  He also testified he is able to make his
own bed, but cannot take out the garbage, vacuum or sweep, and he experiences back pain while
washing dishes.  (Tr. 423-23).  Claimant testified that the care of the family dog is split among
everyone in the household, but that he does not take the dog for walks.  (Tr. 423).  He
acknowledged traveling to Sioux Falls to visit friends, but noted that he was able to set the cruise
control, alleviating the concern about numbness in his feet.  (Tr. 424).  Claimant testified he has
to change position from walking to standing to sitting "at least 50" times in a typical day due to
pain and numbness in his legs and back (Tr. 428), that he lies down for approximately 5 hours a
day, 2 ½ of which are spent sleeping because he is "just really tired mentally and physically, just
drained."  (Tr. 428-29).

The ALJ recognized that claimant's activities are quite limited but improperly discredited his complaints based on the lack of objective medical evidence. (Tr. 19). Further, the ALJ acknowledged plaintiff's reports of fatigue, but rejected the condition as disabling:

> The claimant has not registered persistent or consistent complaints concerning daytime somnolence or fatigue. Granted, he has complained of some problems, but not consistently.

(Tr. 24). The court finds the medical record paints a very different picture. Plaintiff has persistently complained of fatigue consistent with the relapsing remitting type diagnosis. The record reveals the following reports of fatigue: January 3, 2006: "[H]is fatigue is manageable." (Tr. 337); July 28, 2006: "[H]e feels diffusely weak and his energy has been poor." (Tr. 332); April 17, 2007: "He awakens with fatigue which stays with him all day long." (Tr. 175); March 26, 2007: "[G]eneralized weakness. He also complains of fatigue." (Tr. 169); March 26, 2007: "Energy Level Assessment: grade 3- severe fatigue." (Tr. 162); March 27, 2007: "Energy Level Assessment: grade 1- mild fatigue, weak and/or tired." (Tr. 159); March 28, 2007: "Energy Level Assessment: grade 1- mild fatigue." (Tr. 157); December 12, 2006: "Fatigue has been variable." (Tr. 106); March 22, 2007: "He is tired all the time." (Tr. 101); July 3, 2007: "Fatigue has been variable." (Tr. 97); December 27, 2007: "He does note fatigue in the late afternoon." (Tr. 89). Although to a variable degree, plaintiff's complaints of fatigue are consistent, contrary to the ALJ's conclusion.

The ALJ's deficient credibility analysis renders his decision unsupported by substantial evidence. O'Donnell v. Barnhart, 2003 WL 256735 (8th Cir. Mo.). Further, claimant's chronic fatigue may support an award of benefits. See Morris v. Apfel, 1999 WL 33656860 (N.D. Iowa 1999) ("It is well settled that 'chronic fatigue' is a proper basis for finding disability under the

Social Security Act if it prevents a claimant from engaging in substantial gainful activity."),

citing Swenson v. Sullivan, 876 F.2d 683, 685-89 (9th Cir. 1989) (awarding benefits on the basis

of clear medical and subjective evidence of fatigue); Claussen v. Chater, 950 F.Supp. 1287,

1296-97 (D.N.J. 1996) (remanding for further consideration of evidence of fatigue resulting from

multiple sclerosis).

<u>Treating Physician's Opinion</u>

The ALJ considered Dr. Scarberry's Treating Physician's Medical Opinion Statement

completed on February 6, 2008. (Tr. 201).  This statement provides, in part:

> It is my opinion that Mr. Iverson is limited in both the amount and
> type of work he can perform physically and mentally while
> maintaining safety.  He has a gait disturbance secondary to balance
> problems that restricts him in performing physical labor safely.
> The patient endorses daily fatigue which is most likely related to
> multiple sclerosis, as well as insomnia.  I think it would be
> reasonable for him to be able to work part-time. . . ."

(Tr. 205) (emphasis added).  From this statement the ALJ reached the following conclusion:

"The undersigned has considered the opinion of Dr. Scarberry and finds that Dr. Scarberry has

basically declined to say the claimant is disabled.  Indeed, she strongly suggests claimant is

capable of sustained sedentary exertion." (Tr. 24).

In light of this statement, claimant's counsel sought clarification from Dr. Scarberry in a

letter dated June 18, 2008. (Tr. 396).  Dr. Scarberry opined as follows, in direct response to

plaintiff's counsel's questions seeking more information:

> Q: 1.  Was ALJ Olson correct in stating: "Indeed, she [Dr. Scarberry]
> strongly suggests claimant is capable of sustained sedentary exertion" and, if not,
> please briefly explain.
>
> A: Yes, Mr. Iverson is capable of sustained sedentary exertion but would

12

need to stand/walk/or stretch <u>each hour</u>.

> Q: 3.  As all are aware, fatigue is a common symptom of MS, often contributing to the overall disabling effects of the MS condition.  Do you agree that this statement is true in Mr. Iverson's case, and if so, has he presented to you consistent and objectively-based complaints of fatigue to the point that the fatigue would substantially contribute to his inability to do anything more than "part-time" sedentary work?
>
> A: Yes, <u>Mr. Iverson's fatigue contributes (Substantially) to his inability to do anything more than "part-time" sedentary work</u>.

(Tr. 397-98) (emphasis added).

Iverson submitted this new evidence to the AC for consideration.  The AC indicates it considered counsel's contentions of error and Dr. Scarberry's responses to the questions posed by counsel.  (Tr. 5).  Concluding the new information does not provide a basis for changing the ALJ decision, the AC stated, in relevant part:

> The Appeals Council also notes that the decision provides an adequate evaluation of your subjective complaints, including fatigue, and adequately evaluated Dr. Scarberry's assessment in determining your residual functional capacity.  Finally, the Appeals Council notes that Dr. Scarberry's responses in your representative's June 18, 2008, letter are not supported by any new <u>objective</u> evidence and are based, in part, on your subjective fatigue complaints.

(Tr. 5) (emphasis added).

A treating physician's opinion is generally entitled to substantial weight.  <u>Baker v. Apfel</u>, 159 F.3d 1140, 1145  (8th Cir. 1998).  Dr. Scarberry has been treating claimant since his diagnosis in May 2005.  Her opinion must be given more weight than a non-examining DDS expert, especially in light of the fact that Dr. Scarberry is a neurologist specializing in MS, claimant's most severe condition. The opinions of a specialist on a medical issue related to the specialty are generally entitled to more weight than opinions of a non-specialist.  20 C.F.R. §

404.1527(d)(4).  Dr. Scarberry opined that claimant suffers from chronic fatigue (Tr. 206)[4] and

that his fatigue substantially limits his ability to engage in anything more than part-time work.

(Tr.396).  Because the ALJ improperly rejected claimant's complaint's of fatigue and

inadequately assessed the credibility of claimant's subjective complaints, the limited weight

afforded to Dr. Scarberry's opinions on claimant's limitation to part-time work due to fatigue is

also improper.

        Dr. Scarberry clearly determined claimant's chronic fatigue limits his ability to work

more than part-time.  Thus,  the Magistrate Judge finds that the additional evidence, in

conjunction with the record as whole, dictates a conclusion that claimant was only able to work

on a part-time basis during the period in question.  Part-time work does not rise to the level of

substantial gainful employment.  See Bladow v. Apfel, 205 F.3d 356, 359 (8th Cir. 2000) ("only

an ability [on the part of the claimant] to do full-time work will permit the ALJ to render a

decision of not disabled."(citations omitted)). Claimant is entitled to an award of benefits from

February 5, 2005 to the effective date of the favorable decision.

_____

        [4]In response to a question on the Treating Physician Medical Opinion Statement as to
whether or not the claimant suffers from any additional medical conditions ... "which further
impair their ability to heal, cope with pain, and/or affects their ability to be gainfully employed?"
Dr. Scarberry answered affirmatively and identified chronic fatigue and chronic pain as such
conditions.  (Tr. 206).

Combined Effect of the Impairments and Failure to Develop the Record

Plaintiff alleges that the ALJ did not consider the effect his non-severe impairments, sensorial hearing loss, elevated liver function, obesity, migraines and depression, had on each other, and upon his severe impairments.  An ALJ must consider in combination all of a claimant's impairments, regardless of whether any one of the impairments standing alone would be non-severe, and must not fragment them in evaluating their effects.  Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991) (citations omitted).

The ALJ concluded that "claimant's impairments, even when considered in combination, do not meet or medically equal listing-level severity."  (Tr. 18).  The court cannot determine from the ALJ's opinion whether he considered the combined effect of Iverson's impairments. The ALJ discussed each impairment individually, but he did not make specific and well-articulated findings as to the combined effect the non-severe impairments may have had on Iverson's severe impairments.  However, since the court has found the ALJ's primary findings lack substantial evidence, his failure to clearly articulate the combined effect of Iverson's impairments does not affect the outcome of this court's review.  For the same reasons, the court does not consider plaintiff's argument that the ALJ erred by failing to order a psychological examination to properly develop the record concerning his depression.

Vocational Expert Testimony

The ALJ should have addressed claimant's fatigue in the hypothetical to the vocational expert.  Baker v. Apfel, 159 F.3d 1140, 1145 (8th Cir. 1998) (the hypothetical "fell short" by failing to give consideration to the limited time in which the claimant was able to work).   As a result of the improper rejection of the claimant's fatigue condition, the ALJ posed an inadequate

15

hypothetical on which the vocational expert was to base his determination of available jobs in the regional and national economy.  (Tr. 435-45).  The hypothetical does not address claimant's inability to work full time or his need to stand, walk or stretch hourly.  Because the hypothetical the ALJ provided to the vocational expert is deficient, the vocational expert's opinion cannot serve as a basis for denying benefits to the claimant.  Morse v. Shalala, 16 F.3d 865, 874 (8th Cir. 1994). Because the court finds that claimant's fatigue condition rendered him incapable of substantial gainful employment he is entitled to an award of benefits.

### Conclusion

The court notes that the ALJ's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994).  However, the court will reverse an ALJ's findings of fact "a reasonable fact finder would have to conclude" that the original finding was incorrect.  Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1992).   The ALJ  failed to properly evaluate claimant's credibility in terms of his activities of daily living and complaints of fatigue, improperly discredited Dr. Scarberry's opinions, posed an insufficient hypothetical to the vocational expert, and failed to properly consider all of the evidence.  The cumulative effect of these errors renders the ALJ's decision unsupported by substantial evidence.  The Magistrate Judge finds the claimant is entitled to remand of this action for an award of benefits for the closed period from February 5, 2005 to the effective date of the subsequent favorable decision.  It is **RECOMMENDED** that plaintiff's Motion for Summary Judgment (Doc. #18) be **GRANTED**, the Commissioner's Motion for Summary Judgment (Doc. #23) be **DENIED**,  and that the case be **REMANDED** for an award of benefits for the claimed closed period of disability.

**Notice of Right to Object**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 4th day of March, 2010.

*/s/ Karen K. Klein*
Karen K. Klein
United States Magistrate Judge